The U.S. Equal Employment Opportunity Commission

NOTICE OF APPEAL/PETITION
TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS
P.O. Box 19848
Washington, DC 20036
Complainant Information: (Please Print or Type)

| | |
|---|---|
| Complainant's name (Last, First, M.I.): | FLEMING - SHEILA - A |
| Home/mailing address: | 11 Liberty Lane |
| City, State, ZIP Code: | Bedford, MA, 01731 |
| Daytime Telephone # (with area code): | 781-863 1077 |
| E-mail address (if any): | NONE |

Attorney/Representative Information (if any):

| | |
|---|---|
| Attorney name: | |
| Non-Attorney Representative name: | |
| Address: | |
| City, State, ZIP Code: | |
| Telephone number (if applicable): | |
| E-mail address (if any): | |

General Information:

| | |
|---|---|
| Name of the agency being charged with discrimination: | Bedford Veterans Hospital 200 Spring Road MA. 01730 |
| Identify the Agency's complaint number: | 200H-0518-2005102573 |
| Location of the duty station or local facility in which the complaint arose: | 200 Spring Road - Bedford MA. 01730. |
| Has a final action been taken by the agency, an Arbitrator, FLRA, or MSPB on this complaint? | ✓ Yes; Date Received 7-18-05 (Remember to attach a copy<br>___ No<br>___ This appeal alleges a breach of settlement agreement |
| Has a complaint been filed on this same matter with the EEOC, another agency, or through any other administrative or collective bargaining procedures? | ✓ No<br>___ Yes (Indicate the agency or procedure, complaint/docket number and attach a copy, if appropriate) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | ✓ No<br>___ Yes (Attach a copy of the civil action filed) |

NOTICE: Please attach a copy of the final decision or order from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the EEOC and with the agency within 30 days of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.

| | |
|---|---|
| Signature of complainant or complainant's representative: | Sheila Fleming |
| Date: 7-20-05 | |

EEOC Form 573 REV 1/01

To:     Department of Veterans Affairs
        Office of Resolution Management (O8E)
        151 Knollcroft Road, Building #16
        Lyons, NJ 07939
        ATTN: Robyn Labombarda, Regional EEO Officer


From:   Sheila A. Fleming
        11 Liberty Lane
        Bedford, MA 01731


This letter of appeal is in reference to a Notice of Final Agency Decision Letter regarding EEO Complaint No. 200H-0518-2005102573, filed 20 June 2005. my claim of racial discrimination, harassment and a hostile work environment created is due to my supervisor Jo Ann Panke.

During the year 2002, I filed a case with the EEOC (Hearing No.160-2004-00082X), with the understanding that if another incident of this kind were to occur my supervisor Jo Ann Panke would respond immediately to resolve such issues.

On April 29, 2005, I was Team Leader for my shift, during this time period one of my team members informed that a urine bag from the previous shift was overflowing back onto the patient, I informed the Head Nurses of this and thought nothing further of it.

Near the beginning of my shift Pam Gauthier and I were in the medication closet counting medications when all of a sudden in a loud voice Pam Gauthier said "don't you ever tell any else about any mistakes that I make or report anything that I do, you tell me", she did it so suddenly and loudly that it shocked and surprised me, Pam then took off her glasses and threw them down, while blocking the only exit, she then took deep breaths and placed her hand on one hip while moving toward me and then pointing her finger in my face with the other hand continuing to yell at me in a loud voice and saying that I better not ever tell anyone about any mistakes or oversights that may involve her.

As she continued to come toward me I put my hands up because I felt and thought that she was going to hit me, so I yell back to her, "back off me and let me out of the closet" because she appeared very upset and angry. She did not let me out of the closet until she finished her statements.

During this incident Charge Nurses Marilyn Henderson and Christine Surcek were across the hall. Afterwards I was approached by Marilyn Henderson who said to me I told her to "just let it go but she would not" later on Christine Surcek approached me and said "I am sorry for what Pam did to you".

Since both Charge Nurses acknowledged to me that they were somewhat aware of what had transpired between Pam and I, so I was under the impression and understanding that as Head Nurses they would report this to the Nurse Manager Jo Ann Panke.

After a week had passed and not hearing from Jo Ann Panke about what had happen I approached Jo Ann Panke on 9 May 2005 and asked her if she was aware of what happen between Pam and I, she responded "no I am not aware of what happen", at that time I informed her of the incident, afterwards she said to me "give me a week and I will get back to you"

On the day that Jo Ann Panke was suppose to get back to me about this incident she did not come to work, which led me to believe again that my concerns were not important to her because of the fact that she attempted to hide a racial incident in which involved me and another employee named Debbie Copson who used the word nigger around me and also called me a nigger to my face.

This incident went before an Administrative Judge and it was agreed that the Agency would pay $14,250.00 in compensatory damages, reassign Debbie Copson within thirty days of the agreement, provide EEO training to Nurse Manager Jo Ann Panke within thirty days following the agreement.

Therefore on May 23 2005, I reported this incident to the VA EEO and followed up by reporting this to the Bedford Police Department because I felt threaten and was again being ignored by Nurse Manager Jo Ann Panke, a copy of that police report, VA Letter Notice of Final Agency Decision of your EEO Complaint No. 200H-0518-2005102573, Filed on June 20, 2005 and the previous EEO Settlement Agreement are enclosed for your review.

Although Marilyn Henderson does not admit to hearing a threat, Christine Surcek acknowledges that "they had a little thing in the med room" Pam Gauthier also admitted to the investigating Police Officer that she had an issue with me reporting the urine bag incident to the Head Nurse when I was simply following established procedures and guidelines set by the Veterans Hospital.

This is the second time a serious incident involving myself has been concluded not serious by management, and on each occasions I was approached and provoked by both employees due to my race, and since the first incident, Debbie Copson has been allowed to come back and work on the floor again, I feel insulted and slighted by management for allowing Debbie Copson to come back and work on the floor again.

Also, during another occasion, I referred to Pam Gauthier as Pamelia and she said to me if you ever call me Pamelia again I will throw you into the closet, I was not aware that Pamelia was offensive to her, therefore I did not call her Pamelia ever again.

Another reason for believing and feeling this way is because Pam Gauthier was also aware that a caucasian female employee informed me of the overflowing urine bag and Pam Gauthier said nothing to the Caucasian employee about the Caucasian female employee reporting the overflowing urine bag o me.

In both instances Jo Ann Panke was the Nurse Manager and even after formal EEO training she did not immediately respond to another employee conflict that had the potential to result in physical bodily harm to an employee.

I cannot quote legal cases involving related circumstances, but I am aware that I have been discriminated against again by the same supervisor and this last incident has only influenced the atmosphere of a more hostile environment toward me and has opened the possibility for more racial incidents and harrassment.

In closing I ask that you weigh the evidence that I have provide to you, along with the admission of Pam Gauthier when interviewed by the Bedford Police Officer that "she did approached me regarding the urine bag, and that she had an issue with me reporting this incident to the Charge Nurse", the fact that Christine Surcek was aware that "they had a little thing in the med room" and Jo Ann Panke's dereliction of her responsibility as a Nurse Manager Supervisor to counsel overaggressive employees even after receiving formal training from the Office of Regional Counsel leads me to believe that she does not care about my welfare at all.

Sincerely,

Sheila A. Fleming

7-30-05

To:     Equal Employment Opportunity Commission
        Office of Federal Operations
        P.O. Box 19848
        Washington, D.C. 20036

From: Sheila A. Fleming
      11 Liberty Lane
      Bedford, MA  01731

This letter of appeal is in reference to a Notice of Final Agency Decision Letter
regarding EEO Complaint No. 200H-0518-2005102573, filed 20 June 2005.  my
claim of racial discrimination, harassment and a hostile work environment created
is due to my supervisor Jo Ann Panke.

During the year 2002, I filed a case with the EEOC (Hearing No.160-2004-00082X),
with the understanding that if another incident of this kind were to occur my
supervisor Jo Ann Panke would respond immediately to resolve such issues.

On April 29, 2005, I was Team Leader for my shift, during this time period one of
my team members informed that a urine bag from the previous shift was
overflowing back onto the patient, I informed the Head Nurses of this and thought
nothing further of it.

Near the beginning of my shift Pam Gauthier and I were in the medication closet
counting medications when all of a sudden in a loud voice Pam Gauthier said "don't
you ever tell any else about any mistakes that I make or report anything that I do,
you tell me", she did it so suddenly and loudly that it shocked and surprised me,
Pam then took off her glasses and threw them down, while blocking the only exit,
she then took deep breaths and placed her hand on one hip while moving toward me
and then pointing her finger in my face with the other hand continuing to yell at me
in a loud voice and saying that I better not ever tell anyone about any mistakes or
oversights that may involve her.

As she continued to come toward me I put my hands up because I felt and thought
that she was going to hit me, so I yell back to her, "back off me and let me out of the
closet" because she appeared very upset and angry. She did not let me out of the
closet until she finished her statements.

During this incident Charge Nurses Marilyn Henderson and Christine Surcek were across the hall. Afterwards I was approached by Marilyn Henderson who said to me I told her to "just let it go but she would not" later on Christine Surcek approached me and said "I am sorry for what Pam did to you".

Since both Charge Nurses acknowledged to me that they were somewhat aware of what had transpired between Pam and I, so I was under the impression and understanding that as Head Nurses they would report this to the Nurse Manager Jo Ann Panke.

After a week had passed and not hearing from Jo Ann Panke about what had happen I approached Jo Ann Panke on 9 May 2005 and asked her if she was aware of what happen between Pam and I, she responded "no I am not aware of what happen", at that time I informed her of the incident, afterwards she said to me "give me a week and I will get back to you"

On the day that Jo Ann Panke was suppose to get back to me about this incident she did not come to work, which led me to believe again that my concerns were not important to her because of the fact that she attempted to hide a racial incident in which involved me and another employee named Debbie Copson who used the word nigger around me and also called me a nigger to my face.

This incident went before an Administrative Judge and it was agreed that the Agency would pay $14,250.00 in compensatory damages, reassign Debbie Copson within thirty days of the agreement, provide EEO training to Nurse Manager Jo Ann Panke within thirty days following the agreement.

Therefore on May 23 2005, I reported this incident to the VA EEO and followed up by reporting this to the Bedford Police Department because I felt threaten and was again being ignored by Nurse Manager Jo Ann Panke, a copy of that police report, VA Letter Notice of Final Agency Decision of your EEO Complaint No. 200H-0518-2005102573, Filed on June 20, 2005 and the previous EEO Settlement Agreement are enclosed for your review.

Although Marilyn Henderson does not admit to hearing a threat, Christine Surcek acknowledges that "they had a little thing in the med room" Pam Gauthier also admitted to the investigating Police Officer that she had an issue with me reporting the urine bag incident to the Head Nurse when I was simply following established procedures and guidelines set by the Veterans Hospital.

This is the second time a serious incident involving myself has been concluded not serious by management, and on each occasions I was approached and provoked by both employees due to my race, and since the first incident, Debbie Copson has been allowed to come back and work on the floor again, I feel insulted and slighted by management for allowing Debbie Copson to come back and work on the floor again.

Also, during another occasion, I referred to Pam Gauthier as Pamelia and she said to me if you ever call me Pamelia again I will throw you into the closet, I was not aware that Pamelia was offensive to her, therefore I did not call her Pamelia ever again.

Another reason for believing and feeling this way is because Pam Gauthier was also aware that a caucasian female employee informed me of the overflowing urine bag and Pam Gauthier said nothing to the Caucasian employee about the Caucasian female employee reporting the overflowing urine bag o me.

In both instances Jo Ann Panke was the Nurse Manager and even after formal EEO training she did not immediately respond to another employee conflict that had the potential to result in physical bodily harm to an employee.

I cannot quote legal cases involving related circumstances, but I am aware that I have been discriminated against again by the same supervisor and this last incident has only influenced the atmosphere of a more hostile environment toward me and has opened the possibility for more racial incidents and harrassment.

In closing I ask that you weigh the evidence that I have provide to you, along with the admission of Pam Gauthier when interviewed by the Bedford Police Officer that "she did approached me regarding the urine bag, and that she had an issue with me reporting this incident to the Charge Nurse", the fact that Christine Surcek was aware that "they had a little thing in the med room" and Jo Ann Panke's dereliction of her responsibility as a Nurse Manager Supervisor to counsel overaggressive employees even after receiving formal training from the Office of Regional Counsel leads me to believe that she does not care about my welfare at all.

Sincerely,

Sheila A. Fleming

7-20-05

To:    Equal Employment Opportunity Commission
       Office of Federal Operations
       Appelate Review Programs
       1801 L Street, NW
       Washington, D.C. 20507


From: Sheila A. Fleming
       11 Liberty Lane
       Bedford, MA 01731


This letter of appeal is in reference to a Notice of Final Agency Decision Letter
regarding EEO Complaint No. 200H-0518-2005102573, filed 20 June 2005. my
claim of racial discrimination, harassment and a hostile work environment created
is due to my supervisor Jo Ann Panke.

During the year 2002, I filed a case with the EEOC (Hearing No.160-2004-00082X),
with the understanding that if another incident of this kind were to occur my
supervisor Jo Ann Panke would respond immediately to resolve such issues.

On April 29, 2005, I was Team Leader for my shift, during this time period one of
my team members informed that a urine bag from the previous shift was
overflowing back onto the patient, I informed the Head Nurses of this and thought
nothing further of it.

Near the beginning of my shift Pam Gauthier and I were in the medication closet
counting medications when all of a sudden in a loud voice Pam Gauthier said "don't
you ever tell any else about any mistakes that I make or report anything that I do,
you tell me", she did it so suddenly and loudly that it shocked and surprised me,
Pam then took off her glasses and threw them down, while blocking the only exit,
she then took deep breaths and placed her hand on one hip while moving toward me
and then pointing her finger in my face with the other hand continuing to yell at me
in a loud voice and saying that I better not ever tell anyone about any mistakes or
oversights that may involve her.

As she continued to come toward me I put my hands up because I felt and thought
that she was going to hit me, so I yell back to her, "back off me and let me out of the
closet" because she appeared very upset and angry. She did not let me out of the
closet until she finished her statements.

During this incident Charge Nurses Marilyn Henderson and Christine Surcek were across the hall. Afterwards I was approached by Marilyn Henderson who said to me I told her to "just let it go but she would not" later on Christine Surcek approached me and said "I am sorry for what Pam did to you".

Since both Charge Nurses acknowledged to me that they were somewhat aware of what had transpired between Pam and I, so I was under the impression and understanding that as Head Nurses they would report this to the Nurse Manager Jo Ann Panke.

After a week had passed and not hearing from Jo Ann Panke about what had happen I approached Jo Ann Panke on 9 May 2005 and asked her if she was aware of what happen between Pam and I, she responded "no I am not aware of what happen", at that time I informed her of the incident, afterwards she said to me "give me a week and I will get back to you"

On the day that Jo Ann Panke was suppose to get back to me about this incident she did not come to work, which led me to believe again that my concerns were not important to her because of the fact that she attempted to hide a racial incident in which involved me and another employee named Debbie Copson who used the word nigger around me and also called me a nigger to my face.

This incident went before an Administrative Judge and it was agreed that the Agency would pay $14,250.00 in compensatory damages, reassign Debbie Copson within thirty days of the agreement, provide EEO training to Nurse Manager Jo Ann Panke within thirty days following the agreement.

Therefore on May 23 2005, I reported this incident to the VA EEO and followed up by reporting this to the Bedford Police Department because I felt threaten and was again being ignored by Nurse Manager Jo Ann Panke, a copy of that police report, VA Letter Notice of Final Agency Decision of your EEO Complaint No. 200H-0518-2005102573, Filed on June 20, 2005 and the previous EEO Settlement Agreement are enclosed for your review.

Although Marilyn Henderson does not admit to hearing a threat, Christine Surcek acknowledges that "they had a little thing in the med room" Pam Gauthier also admitted to the investigating Police Officer that she had an issue with me reporting the urine bag incident to the Head Nurse when I was simply following established procedures and guidelines set by the Veterans Hospital.

This is the second time a serious incident involving myself has been concluded not serious by management, and on each occasions I was approached and provoked by both employees due to my race, and since the first incident, Debbie Copson has been allowed to come back and work on the floor again, I feel insulted and slighted by management for allowing Debbie Copson to come back and work on the floor again.

Also, during another occasion, I referred to Pam Gauthier as Pamelia and she said to me if you ever call me Pamelia again I will throw you into the closet, I was not aware that Pamelia was offensive to her, therefore I did not call her Pamelia ever again.

Another reason for believing and feeling this way is because Pam Gauthier was also aware that a caucasian female employee informed me of the overflowing urine bag and Pam Gauthier said nothing to the Caucasian employee about the Caucasian female employee reporting the overflowing urine bag o me.

In both instances Jo Ann Panke was the Nurse Manager and even after formal EEO training she did not immediately respond to another employee conflict that had the potential to result in physical bodily harm to an employee.

I cannot quote legal cases involving related circumstances, but I am aware that I have been discriminated against again by the same supervisor and this last incident has only influenced the atmosphere of a more hostile environment toward me and has opened the possibility for more racial incidents and harrassment.

In closing I ask that you weigh the evidence that I have provide to you, along with the admission of Pam Gauthier when interviewed by the Bedford Police Officer that "she did approached me regarding the urine bag, and that she had an issue with me reporting this incident to the Charge Nurse", the fact that Christine Surcek was aware that "they had a little thing in the med room" and Jo Ann Panke's dereliction of her responsibility as a Nurse Manager Supervisor to counsel overaggressive employees even after receiving formal training from the Office of Regional Counsel leads me to believe that she does not care about my welfare at all.

Sincerely,

Sheila A. Fleming

7 - 20 - 05

 

## EEO SETTLEMENT AGREEMENT

This Agreement is entered into between Sheila Fleming, hereinafter referred to as the "Complainant," and the Department of Veterans Affairs, hereinafter referred to as the "Agency."

1. For valuable consideration, the receipt of which is hereby acknowledged, and in further consideration of the promises and covenants herein contained, the Complainant voluntarily withdraws in their entirety all discrimination complaints (including, but not without limitation, EEOC Hearing No. 160-2004-00082X, Agency Case No. 200G-0518-2002104133, filed on August 22, 2002), grievances, unfair labor practices, civil actions and other causes of action against the Agency; and waives all rights to pursue future causes of action against the Agency, its officials, agents and/or employees based on facts in existence as of the date of Complainant's execution of this Agreement, with the exception of any claims that may arise by reason of alleged breach of any terms of this Settlement Agreement. Nothing in the Agreement shall serve as a waiver of the Complainant's right to file EEO complains with respect to future incidents.

2. The Agency shall:

   a. Pay to the Complainant the sum of Fourteen Thousand Two Hundred Fifty and No/100 Dollars ($14,250.00) in compensatory damages, by check payable to the Complainant within sixty (60) days following the parties' execution of this Agreement. The check will be mailed to Kenneth I. Gordon, Attorney at Law, 63 Chatham Street, Boston, MA 02109;

   b. Pay, on behalf of the Complainant, the sum of Fifteen Thousand and No/100 Dollars ($15,000.00) in attorney's fees, by check payable to both the Complainant and her attorney, Kenneth I. Gordon, within sixty (60) days following the parties' execution of this Agreement. The check will be mailed to Kenneth I. Gordon, Attorney at Law, 63 Chatham Street, Boston, MA 02109. Except as otherwise provided herein, the Complainant shall be solely responsible for the payment of all her attorney's fees and costs;

Complainant's Initials: _____    Date: _____

Agency's Initials: _____    Date: _____

- 1 -

Deleted: both

Deleted: and her attorney, Kenneth I Gordon,

   c. Pay directly to the Complainant via her biweekly salary distribution as will be reflected in her earnings and leave statement a Special Contribution Award in the sum of Seven Hundred Fifty and No/100 Dollars ($750.00) within forty five (45) days following the parties' execution of this Agreement;

   d. Reassign Debbie Copson to another ward within thirty (30) days following the parties' execution of this Agreement;

   e. Through its Office of Regional Counsel, provide an EEO training session to Nurse Manager Jo Ann Panke within thirty (30) days following the parties' execution of this Agreement.

3. Both parties also stipulate and agree that:

   a. This Agreement does not constitute an admission of guilt or liability on the part of either party and is entered into solely for the purpose of resolving the stated matters in a manner mutually satisfactory to both parties. Notwithstanding this provision 3.a., the Agency acknowledges that it could have exemplified greater respect for the Complainant's concerns;

   b. This Agreement constitutes the entire understanding between the parties. There are no other terms or commitments, either oral or written, to this Agreement except those specified herein;

   c. If a provision of this Agreement is subsequently determined to be invalid, such provision shall be considered severed, and the invalidity of such provision shall not result in the invalidity of this Agreement or any other provision hereof;

   d. This Agreement shall not serve as a precedent for resolving any other complaints, which have been or may be filed by the Complainant or any other person;

   e. The Complainant acknowledges that if she believes that the Agency has not complied with the terms of this Settlement Agreement, she may notify the Deputy Assistant Secretary for Resolution Management, in writing, within 30 days of the alleged violation requesting that the terms of this Settlement Agreement be specifically implemented. Alternatively, she may request that the EEO complaint described above be reinstated for further processing from the point processing ceased. Thereafter, the Complainant may appeal to the Equal Employment Opportunity Commission pursuant to 29 CFR 1614.504 if she believes that VA has either not fully implemented this Settlement Agreement or improperly failed to reinstate the complaint;

   f. The existence of this Agreement and its terms shall be disclosed on a need-to-know basis only; i.e., they shall be disclosed only to those persons who are responsible for implementation and/or enforcement of this Agreement. Disclosure of this Agreement and/or its terms pursuant to a lawful order of any court, legislative or administrative body shall not constitute a breach of this agreement. The Complainant may disclose this agreement to her family, her legal advisors and financial advisors, and shall inform such persons of its confidentiality;

- 2 -

Complainant's Initials: \_\_\_ \_\_      Date: \_\_\_\_ \_ \_

Agency's Initials: _____     Date: \_\_ \_ \_\_ \_ \_

g.  The parties enter into this Settlement Agreement freely and voluntarily with no unwarranted
    duress or undue influence from any person or source;

h.  The Complainant shall be solely responsible for the payment of income taxes attributable to
    any payments made under the terms of this Agreement; and,

i.  This Agreement shall be made part of the Record of Complainant's above-captioned EEO
    Complaint and remain enforceable under the jurisdiction of the EEOC, following dismissal of
    the complaint.

IN WITNESS WHEREOF, the parties to this Agreement have affixed their signatures and dated this
Settlement Agreement.

Edith Nourse Rogers                          Complainant
Memorial Veterans Hospital

_____                     _____
By: Marc Levenson, M.D        Date           By: Sheila Fleming         Date

- 3 -

Complainant's Initials: ___ ___ ___   Date: ___

Agency's Initials: ___ ___ ___   Date: ___

# Bedford Police Department
## 2 Mudge Way
## Bedford, MA 01730
## (781) 275-1212
## Incident Report
## BED

File No:  N/A
Dispatch Incident Number: 2005000003660

Print Date:  July 11, 2005
Printed By:  dblanchard

## Incident Information

| Occurred On/From | Day of Week | Date | Time | Occurred To | Day of Week | Date | Time | Reported On | Date | Time |
|---|---|---|---|---|---|---|---|---|---|---|
| | Mon | 05/23/2005 | 3:27:00PM | | Mon | 05/23/2005 | 3:27:00PM | → | 05/23/2005 | 3:27:00PM |

| Reported As | Incident Type - Primary | Arresting Officer |
|---|---|---|
| Threatening | Threatening | |

| Incident Address | Reporting Officer |
|---|---|
| 200 SPRINGS ROAD, BEDFORD, MA 01730 | Ronald Undzis |

| Sector | Stat. Area | Sub Stat. Area | Census Tract | Landmark |
|---|---|---|---|---|
| North | North | | | |

| Business Name | Incident Types - Other |
|---|---|
| N/A | |

## Associated Persons Summary

| Type | Name(Last, First, MI) | Date of Birth | Sex | Home Phone # | Work Phone # |
|---|---|---|---|---|---|
| Involved | FLEMING, RONALD G. | 01/01/1958 | M | | N/A |
| Address: | 11 LIBERTY LANE HAFB, BEDFORD, MA 01730 | | | | |
| Victim | Fleming, Sheila A | 01/07/1955 | F | | N/A |
| Address: | 11 Liberty Lane, Bedford, MA 01730 | | | | |
| Location | VA Hospital, . | N/A | N/A | (781) 275-7500 | N/A |
| Address: | 200 SPRINGS ROAD, BEDFORD, MA 01730 | | | | |
| Other | SURCEK, CHRISTINE J. | 01/13/1973 | N/A | N/A | ( |
| Address: | 100 MERRIMACK AVENUE, Apt #: 2, DRACUT, MA 01826 | | | | |
| Witness | Henderson, Marilyn | 11/07/1948 | F | N/A | 1. |
| Address: | 200 Springs Road, Bedford, MA 01730 | | | | |
| Suspect | GAUTHIER, PAMELA M | 06/14/1956 | F | N/A | ( |
| Address: | 37 GEORGIA AVENUE, LOWELL, MA 01855 | | | | |

## Associated Businesses Summary

| Type | Name | Primary Phone # | Secondary Phone # |
|---|---|---|---|
| No Associated Persons reported for incident #: 2005000003481 | | | |

## IBR/UCR Offenses

| Offense Number | IBR Type | Chapter | Section | IBR Type Description | Counts |
|---|---|---|---|---|---|
| 0 | | N/A | N/A | | |
| No Incident Offenses Recorded for Incident #: 2005000003481 | | | | | |

## Arrest Offenses

| Seq # | Chapter | Section | Name(Last, First, MI) | Description of Offense | Counts |
|---|---|---|---|---|---|
| No Arrest Offenses Recorded for Incident #: 2005000003481 | | | | | |

Bedford Police Department
2 Mudge Way
Bedford, MA 01730
(781) 275-1212
Incident Report
BED

File No: N/A
Dispatch Incident Number: 2005000003660
Print Date: July 11, 2005
Printed By: dblanchard

| Arrestee Seq. # 1 | | | | |
|---|---|---|---|---|
| Suspect Type | Suspect Name | Alias/Nickname | Occupation | SSN |
| No Arrest Data Available for Incident #: 2005000003481 | | | | |

| Suspect Seq. # 1 | | | | |
|---|---|---|---|---|
| Suspect Type | Suspect Name | Alias/Nickname | Occupation | SSN |
| N/A | GAUTHIER, PAMELA M | N/A | N/A | N/A |

| Date of Birth | Age | Sex | Race | Ethnicity | Skin Tone | Height | Weight | Eye Color | Hair Color |
|---|---|---|---|---|---|---|---|---|---|
| 06/14/1956 | 48 | Female | N/A | N/A | N/A | 0' 0" | N/A | N/A | N/A |

Scars / Marks / Tattoos / Other Physical Characteristics:
No Physical Characteristic Data Reported

| Victims | | | | | | |
|---|---|---|---|---|---|---|
| Victim Name | Victim Type | Sex | Race | Ethnic Origin | Hospital Destination | Transport Description |
| Fleming, Sheila A | N/A | Female | N/A | N/A | N/A | N/A |

| Vehicle Info | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Vehicle No. | Vehicle Make | Vehicle Model | Vehicle Year | VIN | Primary Color | Secondary Color | Plate No. | State |
| No Vehicle Info Recorded for Incident #: 2005000003481 | | | | | | | | |

| Property |
|---|
| No Property Info reported for Incident #: 2005000003481 |

| Citations | | | | | | |
|---|---|---|---|---|---|---|
| Citation No | Code | Date | Status | Statute | Description | |
| No Citations reported for Incident #: 2005000003481 | | | | | | |

Narratives for Incident Number 2005000003481 ? <u>Yes</u>

Other Narratives not authorized for print? <u>None</u>

Narratives this user authorized to print:

Narrative by: Ronald Undzis  Division: Patrol

| Date & Time | Narrative Description | Entered by | Status | Reviewed by | Last Edit Date |
|---|---|---|---|---|---|
| 05/23/2005 16:22 | | Ronald Undzis | Open | | 05/23/2005 |

At approx. 1527 hrs. on 05/23/05, I (Off. Undzis) was called to the lobby area to take a report of threats. I subsequently conducted an interview with Ronald Fleming and Sheila Fleming (husband/wife) in the interview room. The Fleming's reported that Sheila F. works at the VA Hospital in Bedford, MA. They reported that Sheila F. has experienced problems at her work place in the past. The Fleming's reported that a couple of years ago they filed a civil law suit because one of the workers used racial remarks against Sheila Fleming. They reported that this past law suit was settled out of court. I would later find out the person who reportedly used the racial language was not involved in the current report of threats.

Sheila F. reported that the current report involves a co-worker named "Pamela Gauthier". They reported that an incident occurred with Gauthier approx. one year ago. Sheila F. reported that she referred to Gauthier by the name of "Pamela". Sheila F. said she was unaware at that time that Gauthier wanted to be addressed as "Pam". Sheila F. said that she addressed Gauthier as "Pamela". Sheila F. said that Gauthier responded by stating, "Call me that again and I'll throw you in the closet". The Fleming's indicated that this

Bedford Police Department    Document 6-2    Filed 05/11/2006    Incident Number 2005000003481

2 Mudge Way
Bedford, MA 01730
(781) 275-1212
Incident Report
BED

File No: N/A
Dispatch Incident Number: 2005000003660
Print Date: July 11, 2005
Printed By: dblanchard

incident was reported and the VA separated the two parties from working together on the same shift.

Sheila F. related that she is the team leader of the AM shift at the ward. Sheila F. said that a co-worker came up to her and reported that one of the urine bags in a room was overflowing. Sheila F. said that Gauthier was responsible for the care of this room. Sheila F. related that Gauthier blamed her for making this an issue. Sheila F. related that she heard thru sources that Gauthier had communicated to others that Gauthier stated, "I'll get her when she comes in". Sheila F. named Marilyn Henderson as one of the co-workers Gauthier had spoken to. I asked if she had heard if Gauthier had articulated a specific means of harm against her. Sheila F. indicated that she had not heard of a specific means of harm.

The Fleming's reported that on 04/29/05 an incident occurred between the two. Sheila F. reported that they were both in the Narcotics room counting medication for the patients. Sheila F. described this room as small and tightly enclosed. Sheila F. related that she was confronted by Gauthier. This was apparently over the urine bag incident and a report to another supervisor. Sheila F. related that Gauthier was blocking the door and had her hands on her hips yelling at her. Sheila F. related that Gauthier then reportedly stepped towards her and got into her proximity. Sheila F. said that she felt they were very close to getting into a fight. Sheila F. then related that she got into a defensive fighting stance and told Gauthier to "Back up on me".

Sheila F. indicated that they did not get physical. Upon asking, there were no known eye witnesses. Sheila F. did report that Henderson and Tina Surcek were in the area and heard the confrontation. Sheila F. said they have not become physical as of yet, but Gauthier reportedly slams books on the table and stares (glaringly) at her as she walks down the hallway. Sheila F. also reported that she was told by co-workers that Gauthier "won't let it go". Sheila F. reports that she is fearful that she may be assaulted by Gauthier.

Sheila F. reported that she reported this incident to Joanne Panke. The complaint has reportedly been forwarded to the Department of Veterans Affairs. With consent, I made copies of the first two pages of the complaint form. Sheila F. indicated that she took issue with the VA who reportedly wants to move her to another ward

Investigation to continue..... I will try to contact Henderson, Surcek and Gauthier in the future. I was told that the parties either work a 12 am to 8 shift or a 6 am to 2 shift. Contact may be challenging due to my 3 to 11 shift. I will try to contact make during a 7 to 3 OT shift on 05/25/05. I was told that Gauthier is on a vacation this week.

*Signature - Reporting Officer*                                    *Signature - Reviewing Officer*

Narrative by: Ronald Undzis   Division: Patrol

| ate & Time | Narrative Description | Entered by | Status | Reviewed by | Last Edit Date |
|---|---|---|---|---|---|
| 05/30/2005 08:14 | | Ronald Undzis | Open | | 05/30/2005 |

In the morning of 05/30/05, I placed two calls to 781-275-7500 x2588. Sheila Fleming had given me this number as the number to contact the potential witnesses in this case. Sheila F. had indicated that the potential witnesses involved work schedules that do not correspond with my 3 to 11 shift. I have had to wait for an overtime shift to follow-up on this case. In these two calls no one picked up the phone.

*Signature - Reporting Officer*                                    *Signature - Reviewing Officer*

Narrative by: Ronald Undzis   Division: Patrol

| ate & Time | Narrative Description | Entered by | Status | Reviewed by | Last Edit Date |
|---|---|---|---|---|---|
| 06/08/2005 13:50 | | Ronald Undzis | Open | | 06/08/2005 |

2 Mudge Way
Bedford, MA 01730
(781) 275-1212
Incident Report
BED

Incident Number: 2005000003481
File No: N/A
Dispatch Incident Number: 2005000003660
Print Date: July 11, 2005
Printed By: dblanchard

Around 0600 hrs. on 06/06/05, I called Christine Surcek at the VA. When asked what she could tell me about Sheila Fleming and Pamela Gauthier, Surcek said she was aware, "They had a little thing in the med room". Surcek claimed that she didn't actually witness the incident and that she didn't know what was said "exactly". When asked if she heard Gauthier make any threats with regard to Fleming, Surcek said she didn't hear any threats.

Surcek told me that Marilyn Henderson will not be working until 06/10/05. I asked her if she could have Henderson contact me.

| Signature - Reporting Officer | | Signature - Reviewing Officer | |
|---|---|---|---|

Narrative by: Ronald Undzis  Division: Patrol

| Date & Time | Narrative Description | Entered by | Status | Reviewed by | Last Edit Date |
|---|---|---|---|---|---|
| 06/14/2005 18:34 | | Ronald Undzis | Open | | 06/14/2005 |

As of my 3 to 11 shift on 06/14/05, I have not heard from Marilyn Henderson. I spoke to a VA Patrol Officer during my shift. I asked if he could give Henderson a message to call me after 1500 hrs.

| Signature - Reporting Officer | | Signature - Reviewing Officer | |
|---|---|---|---|

Narrative by: Ronald Undzis  Division: Patrol

| Date & Time | Narrative Description | Entered by | Status | Reviewed by | Last Edit Date |
|---|---|---|---|---|---|
| 06/22/2005 08:00 | | Ronald Undzis | Open | | 06/22/2005 |

In the early morning hours of my 7 to 3 shift on 06/22/05, I called the VA Hospital and spoke with Marilyn Henderson. Henderson said she was in a room across the hallway from the Med room on the date when Sheila Fleming and Pamela Gauthier reportedly had an incident. Henderson related that they (Fleming/Gauthier) were talking. She later related that they were not even loud talking. Henderson reported that she did not hear any threats. Henderson related that she has not heard Gauthier threatening Fleming.

I then spoke with Gauthier. I asked if she could tell what was going on between the two of them. Gauthier said other than not speaking to her there was nothing going on. Gauthier related that she approached Fleming while she was in the Med room. Gauthier related that she had an issue with Fleming reporting the urine bag to the charge nurse. Gauthier said that they both work together from 0730 hrs. to 0800 hours. Gauthier said she told Fleming that she should have gone to one of the responsible nurses if she had an issue.

Gauthier said there was no incident to anyone but "her" (Fleming). Gauthier commented that she didn't know if Fleming was claustrophobic. Gauthier said that the Med room is in close quarters. She said her discussion was related to business. I asked Gauthier if she had made any threats that she would "get" Fleming. Gauthier stated, "No".

Investigation complete, no further action requested at this time.

| Signature - Reporting Officer | Signature - Reviewing Officer |
|---|---|

Bedford Police Department
2 Mudge Way
Bedford, MA 01730
(781) 275-1212
Incident Report
BED

File No: N/A
Dispatch Incident Number: 2005000003660
Print Date: July 11, 2005
Printed By: dblanchard

## Incident Notes:

Create User ID:

Date & Time
No Incident Notes Listed

## Incident Dispatcher Remarks:

Create User ID: system

Date & Time
05/23/2005 16:02:12
Ronald and Sheila Fleming into station to report threats that occured at the VA Hospital. Car3 Undzis dispatched. See Officer Undzis's report.



**Department of Veterans Affairs**
Office of Resolution Management
151 Knollcroft Road Building 16
Lyons NJ 07939

ORM/0E

. **VIA: Federal Express**

In Reply Refer To:

Ms. Sheila Fleming
11 Liberty Lane
Hanscom AFB
Bedford, MA 01731

**SUBJECT: Notice of Final Agency Decision of your EEO Complaint No. 200H-0518-2005102573 - Filed on June 20, 2005**

1. The purpose of this letter is to advise you of the disposition of your complaint of discrimination which you filed against officials of the Bedford VA Medical Center, Bedford, MA. On May 16, 2005, you initiated contact with an EEO Counselor. Counseling concluded on June 15, 2005, when you were mailed, via Federal Express, the Notice of Right to File a Discrimination Complaint which you received on June 16, 2005. On June 20, 2005, you filed a formal complaint of discrimination, VA Form 4939.

2. Your complaint of discrimination raises the following claim:

**A) Complainant was subjected to a hostile work environment/ harassment based on race (Black) when:**

**On April 29, 2005, Complainant was threatened by a co-worker and when she reported the incident to her supervisor (J.P.), nothing was done about the situation.**

3. With regard to the claim as stated in paragraph 2 (A) above, EEO regulations require that a complainant be "aggrieved" and provide for the dismissal of complaints that fail to state a claim. *Authority: 29 CFR 1614. 107(a)(1).* A complainant who fails to allege facts which demonstrate that she has been aggrieved by the matter complained of, has failed to state a claim. Although the Commission's regulations do not define the term aggrieved", the Commission and the courts have held that an aggrieved employee is one who has suffered a personal loss, or harm with regard to a term, condition, or privilege of employment resulting from the action being challenged. *Trafficante v. Metropolitan Life Insurance Co., 409 U.S. 205 (1972); Gatpandan v. Department of the Navy, EEOC Docket No. 05900087 (1990).*

Page 2.

Dismissal Letter

4. We believe in this instant complaint, that you failed to state a claim. You have not indicated that you suffered a personal loss or harm with regard to a term or condition of employment. Further, the circumstances you described, that your co-worker yelled and threatened you, does not render you an aggrieved employee. One or a few isolated remarks suggesting a biased attitude against a particular group does not render a complainant aggrieved, nor does one or two isolated incidents that are not egregious in nature render a complainant aggrieved. *Downarovitch v. USPS, EEOC Docket No. 01953060 (September 6, 1995); Leu v. Navy, EEOC Docket No. 01953670 (October 5, 1995)*. In addition, this incident does not rise to the level of creating a hostile or harassing work environment. No disciplinary action or other adverse action resulted from this circumstance. That is, there is no indication that this matter was more than an isolated occurrence. *Ferreira v. Espy, EEOC Decision No. 1093429 (October 22, 1993); Diaz v. bb of the Air Force, EEOC Request No.* Therefore it is my decision that the claim as stated in paragraph 2 (A) above is **DISMISSED** under the authority as stated in 29 C.F.R. § 1614.107(a) (1), failure to state a claim.

5. This constitutes the **FINAL AGENCY DECISION** on your discrimination complaint. If you are dissatisfied with this decision, you may appeal using the enclosed form, **EEOC Form 573.**

## APPEAL RIGHTS

This Final Agency Decision may be appealed within 30 calendar days of receipt of this decision. The appeal should be addressed to: Equal Employment Opportunity Commission (EEOC), Office of Federal Operations, P.O. Box 19848, Washington, D.C. 20036. If you decide to appeal this decision to EEOC, you should use EEOC Form 573, a copy of which is enclosed.

A copy of your appeal to the EEOC must also be sent to the VA Office of General Counsel at the following address: Department of Veterans Affairs, Office of General Counsel (024), 810 Vermont Avenue, NW, Washington, D.C. 20420.

Statements or briefs in support of your appeal must be submitted to the EEOC within 30 calendar days of the filing of the appeal. A copy of any such statement or brief, including any statements made on EEOC's "Appellant Docketing Statement," must also be sent to the VA Office of General Counsel at the above address. If you file an appeal with the EEOC, your appeal, and any subsequently filed statement or brief, must contain a statement certifying the date and method by which copies of these documents were served on the VA Office of General Counsel.

If you file an appeal with the Commission beyond the above-noted time limit, you should provide the Commission with an explanation as to why the appeal should

Page 3.

Dismissal Letter

be accepted despite its untimeliness. If you cannot explain why timeliness should be excused, the Commission may dismiss the appeal as untimely.

You should also submit a copy of the appeal to the Regional EEO Officer at the same time that you file the appeal with the EEOC at the following address:

> Department of Veterans Affairs,
> Office of Resolution Management (08E),
> 151 Knollcroft Road, Building # 16
> Lyons, New Jersey 07939
> Attn: Robyn Labombarda, Regional EEO Officer

## RIGHT TO FILE A CIVIL ACTION

You also have the right to file a civil action in an appropriate United States District Court. A civil action may be filed:

Within 90 days of receipt of this final decision if no appeal to EEOC has been filed; or,

If an appeal is filed with the EEOC, within 90 days after receipt of EEOC's final decision on your appeal; or,

After 180 days from the date of filing an appeal with the EEOC if there has been no final decision by the EEOC.

If you file a civil action, the head of the Department of Veterans Affairs must be named as the defendant. The head of the Department of Veterans Affairs is **James Nicholson. Mr. Nicholson's** official title is **Secretary of Veterans Affairs.** Failure to provide the name and official title of the head of the Department may result in the dismissal of your case.

If you file a civil action under Title VII (discrimination due to race, color, religion, sex, national origin, or reprisal); or under the Rehabilitation Act of 1973, as amended, (discrimination due to disability), and if you do not have, or cannot afford the services of, an attorney, the Court may upon your request, appoint an attorney to represent you and permit the filing of the action without payment of fees, costs, or other security. The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend the time in which to file a civil action. Both the request and the civil action MUST BE FILED WITHIN NINETY (90) CALENDAR DAYS of the date of receipt of this final agency decision or, if this decision is appealed to the EEOC, within NINETY (90)

Page 4.

Dismissal Letter

CALENDAR DAYS of the date of receipt of the EEOC's final decision on the appeal.

Your appeal may be mailed to:

> Equal Employment Opportunity Commission
> Office of Federal Operations
> P.O. Box 19848
> Washington, DC  20036

Or hand delivered to:

> Equal Employment Opportunity Commission
> Office of Federal Operations
> Appellate Review Programs
> 1801 L Street, NW
> Washington, DC  20507

Or sent by fax to:       (202) 663-7022

6. If you have any questions concerning the processing of the complaint, please contact Delia M. Reyes, EEO Intake Specialist, at (212) 561-2931.

Sincerely yours,

Robyn Labombarda
Regional EEO Officer

Enclosure:    EEOC Form 573

cc:    Facility Director

PRIVACY ACT STATEMENT
(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof are given below.)

1. FORM NUMBER/TITLE/DATE: EEOC Form 573, Notice of Appeal/Petition, January 2001

2. AUTHORITY: 42 U.S.C. § 2000e-16

3. PRINCIPAL PURPOSE: The purpose of this questionnaire is to solicit information to enable the Commission to properly and efficiently adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.

4. ROUTINE USES: Information provided on this form will be used by Commission employees to determine: (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has jurisdiction over the issue(s) raised in the appeal, and (d) generally, to assist the Commission in properly processing and deciding appeals. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a database for statistical purposes.

5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION: Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

Send your appeal to:
The Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 19848
Washington, D.C. 20036

This page was last modified on June 6, 2001.